WILLIAM M. WHITTINGTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whittington v. Commissioner
Docket No. 13057-90
United States Tax Court
T.C. Memo 1992-732; 1992 Tax Ct. Memo LEXIS 769; 64 T.C.M. (CCH) 1618; December 29, 1992, Filed *769 Decision will be entered for respondent. Petitioner pleaded guilty to conspiracy to import into the United States multi-ton quantities of marijuana from before March 1977 until August 1981. He also pleaded guilty to willful attempt to evade income tax for the years 1979 through 1981. Respondent determined deficiencies and additions to tax for petitioner's taxable years 1979 through 1981, relating to the unreported income from petitioner's illegal activities. 1. Held: Petitioner fails to carry his burden of proving respondent's determinations to be in error. 2. Held, further, petitioner is liable for the additions to tax for fraud under sec. 6653(b), I.R.C.
For Petitioner: Glen A. Stankee. For Respondent: Sergio Garcia-Pages. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By notice of deficiency dated March 19, 1990, respondent determined deficiencies and additions to tax against petitioner as follows: Additions to tax
Taxable Year
Deficiency
Sec. 6653(b)
1979
$ 3,746,610
$ 1,873,305
1980
3,749,352
1,874,676
1981
1,225,137
612,569
Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years *770 in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The only issue remaining for decision is whether respondent erred in determining that petitioner had unreported income from the sale and distribution of narcotics during 1979, 1980, and 1981 in the amounts of $ 5,853,659, $ 5,853,659, and $ 1,951,219, respectively. By order dated July 1, 1991, the Court granted respondent's motion for partial summary judgment that petitioner is liable for additions to tax for fraud under section 6653(b) for each year in question. We granted respondent's motion on the grounds that petitioner is collaterally estopped from denying that any underpayment of tax for the tax years in question was not the result of fraud. Accordingly, a determination of petitioner's tax deficiencies for the years in question will also fix the additions to tax attributable to section 6653(b). Background
Some of the facts are stipulated and are so found. The stipulations of fact filed by the parties and attached exhibits are incorporated by this reference. At the time the petition was filed in this case, petitioner, William M. Whittington, was incarcerated in the Federal penitentiary *771 in Atlanta, Georgia. Venue for purposes of appeal of the instant case has been designated by the parties as the Eleventh Circuit Court of Appeals. During the years in issue, petitioner was a race car driver, entrepreneur, and drug smuggler. Petitioner and his brother, Reginald Whittington, Jr., won the "24 Hours of Le Mans" race in 1979, and subsequently raced in the Indianapolis 500. The two brothers each held a 50-percent interest in Road Atlanta, Inc., a corporation which owned and operated an automobile racetrack north of Atlanta, Georgia. Petitioner also owned a 50-percent interest in World Jet, Inc., and Whittington Brothers partnership, while holding various other property and investment interests as well. Moreover, petitioner actively was involved in smuggling into the United States multi-ton boatloads of marijuana from Colombia, South America. On March 10, 1986, by way of an Information filed with the United States District Court for the southern district of Florida, the United States Attorney for that district brought criminal charges against petitioner for drug smuggling and tax evasion. On March 17, 1986, petitioner filed a written plea agreement with the United *772 States in which he pleaded guilty to conspiracy to import into the United States multi-ton quantities of marijuana from before March 1977 until August 1981 in violation of 21 U.S.C. sec. 963. He also pleaded guilty to willful attempt to evade income tax for the years 1979 through 1981, in violation of section 7201. As part of that same plea agreement, Reginald Whittington, Jr., and Gary Levitz pleaded guilty to conspiracy to obstruct the Internal Revenue Service in ascertaining petitioner's income tax liabilities by, among other things, (1) disguising petitioner's narcotics' profits by investing such into legitimate business ventures, (2) transferring substantial amounts of petitioner's narcotics' profits to the Banco Nacional de Mexico, (3) repatriating the moneys into corporate and trust accounts in the United States, and (4) concealing the true beneficial ownership of assets that they purchased on behalf of petitioner. In connection with petitioner's guilty plea, he served time in a Federal penitentiary and, in 1986, forfeited $ 7,000,000 to the United States. Discussion
As stated, petitioner assigns error to respondent's determinations that *773 petitioner had unreported income from the sale and distribution of narcotics during 1979, 1980, and 1981 of $ 5,853,659, $ 5,853,659, and $ 1,951,219, respectively. Petitioner bears the burden of proof. [1] Rule 142(a). Petitioner did not testify at trial, citing Fifth Amendment concerns. He attempted by way of an indirect method of proof -- a net worth analysis -- to show that, for the years in question, he did not underreport his income. We have said with regard to the net worth theory of indirect proof: The net worth theory is based on the proposition that if the increase in a taxpayer's net worth during a specific year plus his non-deductible expenditures for that period, exceed his reported net income for the year, this excess will constitute *774 unreported taxable income. [Estate of Cardulla v. Commissioner, T.C. Memo. 1986-307.]
Although a net worth computation generally represents a tool wielded by respondent, it can also be utilized by petitioner as a means of showing that he did not receive unreported income in the amounts alleged by respondent. We have said: without testifying regarding his illegal income sources, petitioner could have readily demonstrated by schedules of personal expenditures and yearend net worth that he could not have had income in the amount determined by respondent, if such had been the case. * * * [Weimerskirch v. Commissioner, 67 T.C. 672, 679-680 (1977).] [2]
*775 It is through just such an application of the net worth theory that petitioner seeks to prove that, for the tax years in issue, he had no more than $ 1,301,333 of unreported income. Petitioner develops his analysis from the records and testimony of his accountant, Stuart Frankford, and his business manager, Robert Ziegler. He argues that his net worth computation represents a full and complete accounting of his assets and liabilities during the period in issue. Petitioner's approach is relatively straightforward: In 1986, he forfeited his entire net worth to the United States as part of his plea agreement. Statements of petitioner's net worth were prepared by Robert Ziegler to meet the financial disclosure requirements of petitioner's plea agreement. Those statements can be reconciled to a net worth statement of petitioner's prepared by Stuart Frankford at the end of 1982 for the purpose of facilitating petitioner's attempt to obtain a loan. That 1982 statement further can be reconciled to reconstructions of petitioner's net worth made by Stuart Frankford as of the ends of 1978 and 1981. Also, except to the extent conceded ($ 1,301,033), petitioner's reported income for 1979, *776 1980, and 1981 exactly equals the sum of his personal expenditures for that period plus the increase in net worth between the end of 1978 and the end of 1981 calculated by Stuart Frankford. Thus, the argument goes, except as conceded, petitioner did not underreport his income. We decline to sort through the various objections raised by respondent to petitioner's net worth analysis since we agree with respondent's broader contention -- that the analysis itself has no probative value and therefore cannot aid petitioner in his argument. In a nutshell, the analysis depends on our accepting, as a starting point, that the net worth calculations made by Frankford and Ziegler are reasonably accurate. That we cannot do. We cannot accept that the net worth calculations are reasonably accurate because both Frankford and Ziegler disclaimed any knowledge of petitioner's illegal activities. At trial, the Court heard Stuart Frankford describe how, based on the 1978 and 1981 statements of net worth, he was able to conclude that there was no underreporting on petitioner's 1979, 1980, or 1981 returns. The Court reminded Frankford that petitioner was convicted of tax evasion for those years. *777 The Court and Frankford then had the following colloquy: THE COURT: * * * I take it that your analysis indicates that there was no evasion of income tax for any of those years because your balance sheets reconcile with the income tax returns, and there is no unreported income? THE WITNESS: That's correct. THE COURT: The Petitioner was also convicted of conspiracy to import multi-ton quantities of marijuana. I take it that you have no knowledge of that activity? THE WITNESS: None whatsoever. THE COURT: And [you] did not serve as accountant or bookkeeper for that activity? THE WITNESS: That is correct. THE COURT: And that your analysis of the financial data shows neither receipts from that activity; is that correct? THE WITNESS: That's correct. THE COURT: Expenses related to that activity? THE WITNESS: That's correct. THE COURT: Nor profits from that activity? THE WITNESS: That's correct. THE COURT: Okay. A similar colloquy occurred with Robert Ziegler: THE COURT: And you are aware, I take it, that he's [petitioner's] been convicted of willful attempts to evade taxes for '79, '80, and '81? THE WITNESS: Yes, sir, I am. THE COURT: Is it your testimony that you do not *778 know of any income on which he evaded taxes? THE WITNESS: No direct knowledge at all, sir. THE COURT: You do not know of any income for either '79, '80, or '81 that he did not pay taxes on? THE WITNESS: No. * * * THE COURT: You don't have any familiarity with any business dealings that he would have with regard to marijuana? THE WITNESS: No, sir. * * * THE COURT: If he were in the business of marijuana, you wouldn't be familiar with any receipts or expenditures with regard to that business? THE WITNESS: None at all. By virtue of the charges to which petitioner has pleaded guilty, it is indisputable that petitioner had unreported income from an unlawful drug smuggling activity during the taxable years in issue. Indeed, the three counts of tax evasion to which petitioner pled guilty (for 1979, 1980, and 1981) each recited that petitioner "did knowingly and wilfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States". (Emphasis added.) Also, each of the three counts states that petitioner knew that his taxable income for the year in question was "substantially in excess" of the amount reported ($ 183,701 for 1979, *779 $ 215,622 for 1980, and $ 81,041 for 1981). The only issue in this case is the extent of unreported income derived from illegal sources. Both Frankford and Ziegler admit having no knowledge of any of the income with regard to which petitioner was convicted of tax evasion. Thus, the net worth analysis based on the testimony of, and exhibits prepared by, Frankford and Ziegler, represents an incomplete picture of petitioner's financial situation, unless it is reconciled with the income generated by petitioner's illegal activities. Such an unreconciled net worth analysis, resting on the testimony of two witnesses possessing no information whatever regarding any receipts, expenditures, or assets stemming from petitioner's illegal activity, sheds no light on the issue before this Court. No one with any internal demonstrable knowledge regarding petitioner's illegal income has come forward with testimony to supplement or verify the net-worth computation. Accordingly, we give no weight to the computation proffered by petitioner as a means of proving his true income. Petitioner's only other line of attack is to impugn the reliability of respondent's witnesses. Since we do not rely *780 on those witnesses, petitioner's attack is of no avail. Petitioner bears the burden of proving his assignments of error regarding respondent's determination of deficiencies in tax. He has failed to carry that burden. Accordingly, we sustain respondent's determination of deficiencies. V. Section 6653(b) Additions to Tax
As previously noted, this Court, on July 1, 1991, issued an order holding that petitioner is collaterally estopped from denying that any underpayment of tax for each of the tax years in question was not the result of fraud. The only issue for decision in this case, therefore, is the extent of the deficiencies against which additions to tax for fraud will be assessed. Accordingly, since we have sustained respondent's deficiency determinations, we must also sustain the section 6653(b) additions to tax stemming from those deficiencies. Decision will be entered for respondent. Footnotes
1. The Court has previously denied petitioner's motions to (1) shift the burden of going forward with the evidence to respondent and (2) suppress certain evidence. Our reasons for doing so are set forth in our orders accomplishing same, and will not be reiterated here.↩
2. Weimerskirch v. Commissioner, 67 T.C. 672, 679-680 (1977), revd. on a different issue 596 F.2d 358 (9th Cir. 1979). In Weimerskirch↩, we had found, as a matter of fact, that respondent's determination was not arbitrary. Given this finding, respondent's presumption of correctness attached, and it was up to petitioner to prove respondent's determination erroneous. It was in this context that we approved the application of the net worth computation as a legitimate means of adducing such proofs by petitioner. The appellate court's reversal, however, was premised on the finding that respondent's determination was arbitrary since, in the United States Court of Appeals for the Ninth Circuit's view, respondent had not adequately linked petitioner with illegal income from heroin sales.